Shamir v. City of New York

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2015

Heard: August 24, 2015                    Decided: October 22, 2015

Docket No. 14-3606

- - - - - - - - - - - - - - - - - - - - - - - - - - -
RAMI SHAMIR,
     Plaintiff-Appellant,

                 v.

CITY OF NEW YORK, JOHN DOE, NYPCO Lieutenant,
in their individual capacities, ROBERT MURRAY,
NYCPD Lieutenant, in their individual capacities,
     Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, WALKER, and JACOBS, Circuit Judges.

Appeal from the August 27, 2014, judgment of the United States District Court for the Southern District of New York (Colleen McMahon, District Judge), dismissing on motion for summary judgment complaint presenting claims for false arrest, retaliatory arrest, and use of excessive force.

Affirmed as to dismissal of claims for false arrest and retaliatory arrest, reversed as to dismissal of claim for use of excessive force, and remanded.

1

David B. Rankin, Rankin & Taylor, PLLC, New York, NY (Robert M. Quackenbush, Rankin & Taylor, PLLC, New York, NY, on the brief), for Appellant.

Fay Sue Ng, Asst. Corp. Counsel, New York, NY (Zachary W. Carter, Corp. Counsel of the City of New York, Pamela Seider Dolgow, Asst. Corp. Counsel, New York, NY, on the brief), for Appellees City of New York and Robert Murray.

JON O. NEWMAN, Circuit Judge.

This appeal from the dismissal of a civil rights complaint under 42 U.S.C. § 1983 concerns claims for false arrest and use of excessive force and illustrates the peril counsel faces by lack of precision in stating the nature of the claims being asserted. Rami Shamir appeals from the August 27, 2014, judgment of the District Court for the Southern District of New York (Colleen McMahon, District Judge), dismissing, on motion for summary judgment, his complaint against the City of New York, Police Lieutenant Robert Murray, and an unnamed police officer. We conclude that the complaint was properly dismissed to the extent that it alleged claims of false arrest and retaliatory arrest,

2

and, with considerable reluctance, also conclude that the woefully pleaded claim for use of excessive force must be remanded for further proceedings, despite the District Court's justifiable misunderstanding that this claim was either not pleaded or not being pursued.

Background

*Facts of the episode.* The facts, which are assumed to be true for purposes of the Defendants' motion for summary judgment on the ground of qualified immunity, *see Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996), are taken from the complaint and the plaintiff's testimony at a civilian complaint hearing pursuant to Gen. Mun. Law § 50-h (McKinney 2014). On September 15, 2012, Shamir was attending an Occupy Wall Street demonstration near City Hall Park in lower Manhattan with twenty others. He was participating "in a form of civil disobedience," which he characterized as "using sleepful protest." Shamir testified that on the sidewalk of Centre Street he "took out [his] sleeping bag and laid it down on the floor." His sleeping bag was "parallel to the curb." When asked whether he "was intending to sleep there?" he answered, "Yes." He contended that "none of the sidewalk was . . . infringed by [his]

3

sleeping bag," but added that the sidewalk was "part of the concrete that leads from the curb to about maybe one or two feet from the fence to the park," and that he was "probably one or two feet away from the fence."

He acknowledged that police officers "said that we had to, you know, move." He added, "I don't know if it was an order to disperse, but, you know, something maybe along those lines." His complaint acknowledges that "(a) member(s) of the NYPD gave what appeared to be an order to disperse." The complaint also alleges that Shamir "complied with police orders by leaving moving [*sic*] from where he was located."

Within less than half an hour several more police officers arrived at the scene. According to Shamir, "[w]hen we were given . . . what I understood as a definite order to disperse, I got up and took my sleeping bag" and "put it on the bench . . . a couple of feet [away]." Then, Shamir testified, "As the police officers began to crowd around the people who had remained on the ground, . . . I went up to one of the police officers and I told him that he's a thug," and "I may have yelled at them." Shamir was then arrested.

Police Officer Rodriguez (presumably the "Doe" defendant in the complaint) handcuffed Shamir using "zip-tie

4

handcuffs." Shamir complained that the handcuffs were "really . . . tight" and "really hurt." Shamir repeatedly asked that the handcuffs be loosened, but his requests were denied. He was taken to a precinct, where he showed police officers his hands which, he testified, were "really discolored," "really swollen," and "really . . . blue." After being released from police custody, Shamir went to Lenox Hill Hospital, where a doctor gave him pain medicine and put a splint on his right hand. He wore the splint for two weeks. He consulted a hand specialist. His pain became worse. As of the day of the hearing, nearly nine months after the arrest, he could not completely move the thumb of his right hand.

Shamir was arraigned more than 24 hours after his arrest on a charge of unlawful camping in violation of 56 RCNY 1-04(p). The charge was later dismissed.

*District Court proceedings.* Shamir filed a complaint against Lt. Murray, police officer "Doe," and the City of New York, alleging federal claims under 42 U.S.C. § 1983 and pendent state law claims. Because a principal issue on this appeal concerns what federal claims Shamir sought to plead, we set forth the relevant language from paragraph 28 of the

5

complaint that alleges the "freedoms" allegedly denied in violation of the Constitution:

> "a. freedom from unreasonable searches and seizures of his person, under the Fourth and Fourteenth Amendments,

> "b. freedom from arrest without probable cause, under the Fourth and Fourteenth Amendments."

In this Court, Shamir contends that paragraph (a), understood in light of the factual allegations of the complaint, pleads a claim of excessive force in the course of his arrest, based on the tightness of the handcuffs and the refusal to loosen them despite his repeated requests.

The Defendants moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), solely on the ground that the police officers were entitled to qualified immunity with respect to the claim for false arrest. In a supporting memorandum they contended that probable cause existed to arrest Shamir for camping in a park, in violation of 56 RCNY § 1-04(p), and for disorderly conduct by failing to obey an order to disperse, in violation of N.Y. Penal Law 240.20(6). Neither their motion to dismiss nor their memorandum in support of the motion made any reference to a claim of excessive force.

6

Shamir's memorandum in opposition to the motion to dismiss also made no reference to a claim of excessive force. His counsel filed a "declaration" attaching the transcript of Shamir's testimony at the section 50-h hearing and withdrawing Shamir's claim against the City of New York. With that transcript before the Court, the Defendants then moved to amend their motion to dismiss to become a motion for summary judgment pursuant to Fed. R. Civ. P. 56, a request that the District Court granted.

Shamir's counsel then filed a "declaration" that included the following: "Further, based upon a review of defendant's motion, they did not move to dismiss the complaint on 'Fourth Amendment - Excessive Force' grounds. They only moved to dismiss based upon probable cause."

The Defendants filed a memorandum in support of the converted motion for summary judgment, renewing their claim for qualified immunity with respect to the arrest of Shamir and again not mentioning a claim of excessive force.

The District Court granted the Defendants' motion for summary judgment. The Court stated, "Plaintiff admitted in his 50-h testimony that he stopped in the park, took out his sleeping bag, laid it on the 'floor' and sat on its with the intention of spending the night there." This admission, the

7

Court ruled, established probable cause, or at least the "arguable probable cause" that sufficed for qualified immunity. The Court's opinion made no reference to a clam of excessive force.

## Discussion

### I. Excessive Force

On appeal, Shamir contends that a remand is required for adjudication of what he asserts is a claim of use of excessive force in the course of his arrest. It is entirely understandable that the District Court did not adjudicate an alleged claim of excessive force. Nowhere in the complaint is there an explicit claim that excessive force was used in the course of Shamir's arrest. There is no excuse for his lawyer's failure to state such a claim in plain language. Nevertheless, we feel obliged, with apologies to the District Court, to infer the pleading of an excessive force claim from the clues lurking beneath the inartful wording of the complaint.

As noted above, paragraph 28 sets forth two separate ways that the police officers deprived Shamir of his constitutional rights. Subparagraph 28(a) alleges deprivation of the "freedom from unreasonable searches and seizures of his person." Because the complaint's

8

allegations of facts do not mention any search of Shamir's person, this subparagraph is fairly read to allege only an unreasonable seizure of his person. Read in isolation, the subparagraph could be understood to allege an arrest without probable cause. However, subparagraph 28(b) alleges deprivation of the "freedom from arrest without probable cause." The existence of that subparagraph implies that paragraph 28(a), unless it is redundant, is endeavoring to allege a deprivation of a constitutional right other than freedom from an unlawful arrest.

An arguable identification of that other right can be inferred from the phrase "unreasonable . . . seizure of the person," coupled with the Supreme Court's analysis of claims that law enforcement officers used excessive force in the course of an arrest. "Such claims," the Court stated in *Graham v. Connor*, 490 U.S. 386, 388 (1989), "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Thus, the use of excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment.

Paragraph 22 of the complaint supplies the factual predicate for understanding subparagraph 28(a) to allege use of excessive force in making the arrest. Paragraph 22

9

states, "P.O. Doe placed Mr. Shamir in zip-tie handcuffs and intentionally tightened them excessively, causing injury to Mr. SHAMIR's lower arms." Shamir's 50-h testimony supplied further details of the pain and consequences of the tight handcuffing. In addition, Shamir's lawyer submitted, albeit as an afterthought, a "declaration" pointing out that the Defendants "did not move to dismiss the complaint on 'Fourth Amendment - Excessive Force' grounds. They only moved to dismiss based upon probable cause." Of course, there was no excuse for omitting, from the memorandum opposing the Defendants' motion to dismiss, the Plaintiff's argument that the Defendants' motion ignored the alleged excessive force claim, which, on the Plaintiff's theory, would have defeated dismissal of the entire complaint, even if qualified immunity warranted dismissal of the false arrest claim.

With an excessive force claim reluctantly inferred from Paragraph 28(a) of the complaint, there can be no doubt that the claim, on the facts alleged, warrants further consideration. Several decisions have recognized that excessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment, applicable to the states by virtue of the Fourteenth Amendment. *See, e.g., Vondrak v. City of Las*

10

*Cruces*, 535 F.3d 1198, 1208-09 (10th Cir. 2008); *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005); *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005).

II. False Arrest

We agree that the Defendants are entitled to qualified immunity as a defense to the claim of false arrest, but for reasons different than those articulated by the District Court. The District Court ruled that the police officers had probable cause, or at least "arguable probable cause," *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013), sufficient for qualified immunity, to arrest Shamir for camping in the park. The Court relied on the fact that Shamir was observed placing his sleeping bag on the sidewalk next to the fence surrounding City Hall Park and his testimony at the 50-h hearing that he intended to sleep there as a protest.

Probable cause is determined on the basis of facts "known to the arresting officer at the time of the arrest," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). What Shamir admitted several months after his arrest cannot be used to show what the officers knew at the time of the arrest. Because the record is not fully developed at this stage

11

of the proceeding, the District Court did not have testimony from any of the officers confirming that at least one of them saw Shamir sitting on his sleeping bag and then had reason to believe that he intended to sleep in an area covered by park regulations.[1]  Accordingly, although we need not express an opinion about whether Judge McMahon was entitled to conclude that there was at least arguable probable cause to arrest Shamir for illegal camping, we affirm dismissal of the false arrest claim on an alternate ground.

Probable cause did exist for arresting Shamir for disorderly conduct by violating an order to disperse. Shamir's 50-h testimony, relevant to what the officers knew at the time of the arrest, establishes that police officers gave such an order.  Despite Shamir's vague claim that, in response to the order, he moved "from where he was located," he admitted that he "went up to one of the police officers" and called him a thug.  That approach to the officer is the antithesis of complying with an order to disperse.  Even if, as Shamir suspects, the motivation for the arrest was his remark to the officer, the violation of the order to

---

[1] It is undisputed that under the New York City Charter park rules and regulations are enforceable "within any park . . . or within a distance of three hundred fifty feet from the outer boundaries thereof." Ch. 21, § 533(a)(5) (2013).

12

disperse provided probable cause to arrest. An officer's motivation is irrelevant to the Fourth Amendment validity of an arrest. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

## Conclusion

The judgment is affirmed to the extent that the claims for false arrest and retaliatory arrest were dismissed, and reversed and remanded with respect to the claim of excessive force in making an arrest. Because this appeal could have been avoided by proper pleading, no costs are awarded. Reversed in part and remanded.