14-4788-cv
*Keith v. City of New York*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of March, two thousand sixteen.

PRESENT:    JOSÉ A. CABRANES,
            BARRINGTON D. PARKER,
            GERARD E. LYNCH,
                        *Circuit Judges.*

_____

RICHARD KEITH,

       *Plaintiff-Appellant,*

       v.                         No. 14-4788-cv

THE CITY OF NEW YORK, DETECTIVE JARRET BROWN, LIEUTENANT FRANCIS MORRISSEY, DETECTIVE EVELYN GUITIERREZ, SHIELD #946, DETECTIVE SARAH MATHERS, SHIELD #4327, DETECTIVE ELIZABETH MURRAY, SHIELD #29078,

       *Defendants-Appellees.*

_____

FOR PLAINTIFF-APPELLANT:       DAVID A. ZELMAN, Law Offices of David A. Zelman, Brooklyn, NY.

FOR DEFENDANTS-APPELLEES:       AMANDA SUE NICHOLS (Richard Dearing & Cecelia Chang, of counsel, *on the brief*) *for* Zachary W. Carter, Corporation

Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Richard Keith ("Keith") appeals from a December 1, 2014 opinion and order of the District Court granting summary judgment to defendants-appellees on his federal and state false-arrest and malicious-prosecution claims, as well as his federal denial-of-fair-trial claim. *See Keith v. City of New York*, No. 11-CV-3577 (KPF), 2014 WL 6750211 (S.D.N.Y. Dec. 1, 2014). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"This Court reviews a grant of summary judgment by the district court *de novo*." *Lawrence + Mem'l Hosp. v. Burwell*, —F.3d—, 2016 WL 423702, at *5 (2d Cir. Feb 4, 2016). Upon *de novo* review of the record and relevant law, we affirm.

Turning first to the District Court's dismissal of Keith's false-arrest claims, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff. Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014) (citation and some internal quotation marks omitted); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks omitted)).

"Under both federal and New York law, an officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Garcia*, 779 F.3d at 92 (internal quotation marks omitted). "[A]bsent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) (internal quotation marks omitted); *see also Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) ("A law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.") (alterations and internal quotation marks omitted)).

2

Assuming for present purposes that Keith was in fact "arrested" before his participation in the lineup, we find that the arresting officers had at least "arguable probable cause" to effect that arrest, because the victim of the rape positively identified Keith after seeing him walking in her neighborhood.[1] Specifically, when asked during her deposition whether there "c[a]me a time . . . that [she] called the police to say that [she had seen] the person [who had] attacked [her]," the victim responded, "Yeah. . . . I tell them I saw the person. I saw the person. I saw somebody who looked like the person . . . ." RA-570.

Keith nevertheless claims that arguable probable cause was lacking, because "the victim here never positively identified plaintiff; instead, she only stated that plaintiff *looked like* the attacker." Pl.'s Br. 30 (emphasis in original). In other words, Keith argues that the victim's use of the phrase "looked like"—instead of, say, the word "was"—suggests that her identification was equivocal.

When read in context, however, the phrase "looked like" cannot bear the weight that Keith places on it. As the quotation from the victim's deposition testimony reproduced above demonstrates, three other statements that she made while giving the same answer indicate that her identification was definitive. Additionally, the definitiveness of her identification is reinforced by the contemporary understanding of the police. *See* RA-667 (police record describing the victim's statement "that she did see perp"); RA-480 (deposition of police officer recounting that he spoke with the victim by telephone the day after her identification of Keith, and that he asked her whether "she was sure that that was the person that had raped her," to which she responded "that she was," and that he also asked her whether "there was any possibility that perhaps she had recognized him just from the neighborhood, that he may have been familiar to her from the neighborhood and may, in fact, not be the rapist," to which she responded, "[n]o, I . . . recognized him as the person that attacked me" (internal quotation marks omitted)).

Under these circumstances, there is no reason to believe that the victim was using the phrase "looked like" to communicate uncertainty. As such, the instant case is readily distinguishable from the case that Keith cites in support of his argument, *see* Pl.'s Br. 29, in which the victim responded to being shown a photograph of the plaintiff by stating "that he *would* be her assailant *if* he had shorter hair and a thinner face," *Williams v. Moore*, 602 N.Y.S.2d 199, 201 (2d Dep't 1993) (emphasis supplied) (alterations and internal quotation marks omitted). We will not permit Keith to manufacture a genuine issue of material fact by "read[ing] [the victim's] statement out of context."

---

[1] The District Court found that the police did not arrest Keith before his participation in the lineup. According to the District Court, "the stop was merely an investigatory detention," and as a result, "the officers needed only reasonable suspicion," not probable cause, "that [Keith] may have been involved in a crime." *Keith*, 2014 WL 6750211, at \*12 (internal quotation marks omitted). We need not address this finding, because we hold that the police had arguable probable cause to arrest Keith at that time, and are therefore entitled to qualified immunity.

*Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 812 (7th Cir. 2011); *see also Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013) (suggesting that a party cannot create a genuine issue of material fact by reading a statement out of context).

What is more, we are unaware of any pertinent case in which a court has suggested that, in order for a witness's identification of a perpetrator to provide probable cause, it must be made with complete certainty. Indeed, courts have explicitly held that it need not be. *See People v. Pelzer*, 982 N.Y.S.2d 316 (1st Dep't 2014) ("The victim's identification of defendant from a photo array need not be made with complete certainty to give rise to probable cause."); *People v. Rhodes*, 488 N.Y.S.2d 821, 822 (2d Dep't 1985) ("Although the identification was not made with complete certainty, it was sufficient to establish probable cause to arrest defendant for the crimes alleged."); *cf. Norwood v. Mason*, 524 F. App'x 762, 765 (2d Cir. 2013) (non-precedential summary order) ("New York courts routinely hold that a victim's photo identification of a person provides the police with probable cause to arrest that person, even where the identification may not be 100% reliable.").

In short, at an absolute minimum, an "officer[ ] of reasonable competence" could have concluded that "the probable cause test [had been] met" on the basis of the victim's identification of Keith, which is all that is necessary for qualified immunity to attach. *Garcia*, 779 F.3d at 92 (internal quotation marks omitted).

Keith argues in the alternative that "there were sufficient doubts about the victim's veracity and/or credibility such that further investigation would be warranted even after a positive identification." Pl.'s Br. 34. We are not persuaded. For example, Keith relies throughout his brief on the notion that the victim had "not seen her attacker's face." Pl.'s Br. 35; *see also id.* at 36 ("[T]he victim testified that she did not see the attacker[']s[ ] face . . . ."). But this is contradicted by the victim's own deposition testimony. *See, e.g.,* RA-553 ("Q: During the assault or after the assault, did you get a good look at [your attacker]? A: Yes."). Further, to the extent that portions of the victim's deposition testimony could be read to suggest that she did not see her attacker's face, *see, e.g., id.* at 565 ("I couldn't really make out his face."), there is no evidence in the record whatsoever that the victim ever communicated this information to the police, *see id.* at 559 ("Q: Did you tell the police that you didn't have a good look of the person? A: No, I can't remember."); *id.* at 566 ("Q: Now, again, did you tell the police, at some point prior, that you didn't get a good look at the person's face? Did you ever tell them that? A: I can't remember, no."), which would be necessary to undermine the existence of arguable probable cause, *see Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) ("Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." (internal quotation marks omitted)). For all of these reasons, we affirm the District Court's dismissal of Keith's false-arrest claims.

Turning next to the District Court's dismissal of Keith's malicious-prosecution claims, we note that, "[b]ecause lack of probable cause is an element of a malicious prosecution claim, the existence of probable cause is [also] a complete defense to a claim of malicious prosecution."

4

*Stansbury*, 721 F.3d at 94–95 (internal quotation marks omitted); *see also Torres v. Jones*, —N.E.3d—, 2016 WL 697947 (N.Y. Feb. 23, 2016) ("Just as in the false arrest context, the plaintiff in a malicious prosecution action must also establish at trial the absence of probable cause to believe that he or she committed the charged crimes . . . ."). "The existence . . . of probable cause in a malicious prosecution suit is . . . determined . . . as of the time the prosecution is commenced." *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004).

Although "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases," *Stansbury*, 721 F.3d at 95, "information from an identified citizen accusing another individual of the commission of a specific crime is [generally still] sufficient to provide the police with probable cause." *Okunubi v. City of New York*, 971 N.Y.S.2d 338, 340 (2d Dep't 2013) (dismissing the plaintiff's malicious-prosecution claim because "the eyewitness victim of the alleged crimes made an in-person identification of the plaintiff to a police officer"); *see also Fortunato v. City of New York*, 882 N.Y.S.2d 195, 196 (2d Dep't 2009) (suggesting that "a witness's identification of a suspect generally may be sufficient to establish probable cause" and thereby defeat a claim of malicious prosecution). Thus, "our finding that the officers had arguable probable cause to arrest [Keith] necessarily entitles the defendants to qualified immunity on his malicious prosecution claim as well," *Pinter v. City of New York*, 448 F. App'x 99, 105 n.6 (2d Cir. 2011) (non-precedential summary order), unless Keith can identify some fact that came to the attention of the police before the commencement of his prosecution that was sufficient to "dissipate" the probable cause that existed at the time of his putative arrest, *see Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."); *see also Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[P]robable cause is a defense to a claim of malicious prosecution if it is not later nullified by information establishing the defendant's innocence . . . .").

Keith does not even attempt to do so here. And even if he had, that attempt would have failed. If anything, the events that took place after Keith's putative arrest strengthen our determination that arguable probable cause existed, because the victim positively identified him once again, this time during a lineup. *See* RA-574–75 ("Q: [W]hen you looked through the peephole to view the lineup, did you see anyone that you recognized . . . ? A: Well, I recognized . . . the person looks like the person and I tell them, 'That is the person. That is the person.'"). For all of these reasons, we also affirm the District Court's dismissal of Keith's malicious-prosecution claims.[2]

---

[2] Keith also pleaded claims against defendant-appellee the City of New York (the "City") for false arrest and malicious prosecution. His claims against the City based on the actions of the individual defendants require him to show that the violation of his rights resulted from a municipal custom or policy. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991). Because Keith has failed to produce any evidence tending to prove that his arrest and prosecution were pursuant to

5

Finally, Keith's denial-of-fair-trial claim, "as alleged in the complaint, is based on [his] factual claim that, despite the fact that defendants knew or should have known that the victim never positively identified [Keith], defendants still forwarded information to the prosecutor which stated that the victim identified [him]." Pl.'s Br. 57. Having determined above that the victim *did* positively identify Keith, we affirm the District Court's holding that this claim has no basis.

## CONCLUSION

We have considered all of Keith's other arguments on appeal and found them to be without merit. Accordingly, we **AFFIRM** the District Court's December 1, 2014 opinion and order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

a City policy or custom, summary judgment in favor of the City was appropriate. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).