Vizcarrondo v City of Yonkers (2024 NY Slip Op 51619(U))

[*1]

Vizcarrondo v City of Yonkers

2024 NY Slip Op 51619(U)

Decided on November 27, 2024

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 27, 2024
Supreme Court, Westchester County

Victor Vizcarrondo, Plaintiff,

against
City of Yonkers, Stephen Donohue, Dennis M. Robertson, Jr., "John Does," 
 "Jane Does," "John Roes," "Jane Roes," being fictitious names, the true names 
 of police officers of the City of Yonkers Police Department being unknown to plaintiff at this time, Defendants.

Index No. 65933/2020

Attorney for Plaintiff:
William Martin, Esq.
Martin & Colin, P.C.
44 Church Street
White Plains, New York 10601
(914) 771-7711
Attorney for Defendants:
Alexandra R. Bisesi, Esq.
Corporation Counsel
40 South Broadway, Room 300
Yonkers, New York 10701
(914) 377-6253

William J. Giacomo, J.

In this underlying action asserting claims for false arrest and imprisonment, assault, battery, negligence, respondeat superior, among others, defendants the City of Yonkers, Stephen Donohue (Donohue) and Dennis M. Robertson, Jr. (Robertson, Jr.) (collectively, defendants) move, pursuant to CPLR 3212, for an order granting summary judgment dismissing plaintiff Victor Vizcarrondo's complaint.
Papers Considered
Motion Seq. 1 NYSCEF Doc. No. 29-60
1. Notice of Motion/Statement of Material Facts/Affirmation of Alexandra R. Bisesi, Esq./Memorandum of Law/Supporting Papers to Motion/Exhibits A-O
2. Affirmation of William Martin, Esq. in Opposition/Exhibit 1/Statement of Material Facts/Memorandum of Law in Opposition/ Amended Statement of Material Facts/Amended Affirmation of William Martin, Esq.
3. Affirmation of Alexandra R. Bisesi, Esq. in Reply/Exhibits A-B/Supporting Papers to Motion
FACTUAL AND RELEVANT PROCEDURAL BACKGROUND
Plaintiff commenced this action on or about December 10, 2020 by filing a summons and complaint asserting State claims of assault and battery, unlawful search of premises, unlawful detention and search of person, false arrest/unlawful imprisonment, negligence, negligent infliction of emotional distress, negligent hiring, training, retention and supervision, and also several violations of 42 USC § 1983 arising from the execution of a search order warrant on September 12, 2019.
The search order warrant in question was issued on September 6, 2019 by the Honorable Evan Inlaw of the Yonkers City Court. The warrant provides that Detective Stephen Donohue, assigned to the Yonkers Police Department, provided proof before the Judge "that there is reasonable cause to believe that such property to wit: heroin, cocaine, crack/cocaine, marijuana, narcotics paraphernalia .. . are being unlawfully possessed and which constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense in violation of Article 220, and 221 of the Penal Law of the State of New York . . . ." The search order was ordered for 44 Cliff Street, Apt 2R, Yonkers, New York, for the person of Victor Vizcarrondo and for a 2005 Gray Dodge Neon registered to Fionnuala Murray (Murray) of 44 Cliff Street, Apt 2R. The warrant directed any police office of the Yonkers Police Department and any criminal investigator of the Westchester District Attorney's Office to make an immediate search of the person and property listed, for the items including, but not limited to, heroin, cocaine, cell phones and text messages, within 10 days, anytime day or night, without first announcing their purpose or authority. The warrant noted that "buy 3 was after 9pm," and that the affidavit of Stephen Donohue, submitted in support of the search warrant should remain sealed until further order of this Court.
The search warrant was executed on September 12, 2019. The relevant testimony surrounding its execution is as follows:
In 2019, plaintiff was employed by a rubbish removal company. Plaintiff testified that Murray is his girlfriend and they share a daughter together. On the night of the incident plaintiff was at Murray's apartment, located at 44 Cliff Street, Apt 2R. He was with their daughter, who was one year old at the time, and with Murray's daughter, was who 17 years old. At around 9:00 p.m., the Yonkers police department knocked on the door and plaintiff let them in. They had initially advised plaintiff they were there because they thought they heard a woman calling for help, but once they were inside the house, they advised plaintiff they were there to execute a search warrant. The police then began searching the apartment while plaintiff, Murray and the children were present. They were not handcuffed and were advised to just wait. The car was also searched. The police allegedly emptied out the cabinets and made a mess of the apartment and the car. Plaintiff was not provided with a copy of the warrant until after the search was complete.
During plaintiff's EBT, he testified that he was taken to a bedroom and strip searched. [*2]The strip search lasted about ten minutes. Plaintiff testified that the officers were in the apartment for about an hour. He testified that the police advised him not to take things personally and that they were just doing their job. There were no arrests made as a result of the search. Plaintiff testified that he did not sustain any physical injuries during the search, however, he required therapy as a result. Specifically, plaintiff testified that after the execution of the search warrant he "was just over-nervous around police and I would stutter and stuff. So I just figured, you know  I went to my primary care and he told me to seek some type of therapy."
The police returned later that evening with a copy of the warrant. During his deposition, plaintiff was asked about the allegations in the search warrant, that an individual purchased heroin a couple of times at the apartment and once from plaintiff in Murray's car. Plaintiff testified that none of that ever occurred.
Murray testified that the officers did not draw any firearms during the search. The officers requested her car keys and she voluntarily turned them over.
Donohue testified that he submitted an affidavit in support of the search warrant based on information from a confidential informant, who had a reliable track record. He testified about the contents of his affidavit. In relevant part, Donohue affirmed that he observed plaintiff sell heroin to the confidential information in three controlled buys. For example, the third controlled buy occurred on August 27, 2019 around 9:00 p.m. Donohue observed the confidential informant and plaintiff walking over to a gray 2005 Dodge Neon. He then saw plaintiff open up the passenger side door and retrieve heroin and hand it to the confidential informant. Donohue was present during the execution of the search warrant but did not recall anything specific about it. He testified that it was not the custom and practice of the police department to conduct a strip search, he never received training on how to conduct one and that he did not recall conducting one. Donohue stated that they performed the search and didn't find any evidence to make an arrest at that time.
Detective Dennis Robertson also participated in the execution of the search warrant. He did not recall any strip searches being conducted. He testified that upon completion of the search, no evidence was uncovered, no arrests were made and the case was marked closed.
Robert Devitt, the Detective Sergeant of the Narcotics Unit for the City of Yonkers, also testified. Devitt testified that he was involved in an investigation and eventual search of a residence used by the plaintiff. In relevant part, Devitt testified that it was not the custom and practice of the police to conduct a strip search in the residence. Specifically he stated, "when an interview is done, they're taken to a private area. Generally speaking  generally speaking, if you're talking about custom and practice, if something was done where we needed to do a strip search it would be at the city jail and we would do it under the cameras of the  the city so it was done properly."
Plaintiff filed an amended complaint on May 8, 2023 alleging twelve causes of action grounded in constitutional and state law violations. In the first cause of action, for assault and battery, plaintiff alleges that he suffered, and continues to suffer from, physical pain and injuries he sustained during defendants' search of the premises. The complaint alleges that defendants drew firearms, handcuffed plaintiff, ordered and shoved plaintiff to the floor and strip searched him in front of others in the apartment.
The second cause of action, alleging unlawful search of premises, states that the search warrant was not based on probable cause as, among other reasons, any information relied on in [*3]the search warrant affidavit provided by a confidential informant was not truthful or reliable.
In the third cause of action, unlawful detention and search of person, plaintiff alleges that defendants were employed with the City of Yonkers when they engaged in unnecessary conduct when performing the execution of the search warrant. The complaint states that plaintiff suffered, and continues to suffer, from physical pain and mental disturbance as a result of defendants' conduct.
In the fourth cause of action, grounded in false arrest and unlawful imprisonment, plaintiff alleges that the detention and search were not based on probable cause. Further, the defendants were employed by the City of Yonkers and working within the scope of their employment at the time of the false arrest.
The fifth cause of action alleges that defendants were negligent while performing the execution of the search warrant. In the sixth cause of action, negligent infliction of emotional distress, plaintiff alleges that defendants were careless in the performance of their duties and their conduct while performing the search warrant was extreme or outrageous. The seventh cause of action alleges that the City of Yonkers was negligent in the screening, hiring, training and supervision of its police officers.
The eighth, ninth, tenth and eleventh causes of action allege that defendants were acting under the color of State law when they conducted an unlawful premises search, an unlawful search of person, an unlawful detention and confinement, and when they falsely arrested and imprisoned plaintiff, in violation of plaintiff's rights under the United States Constitution. The twelfth cause of action alleges that defendants were acting under the color of State Law when they deprived plaintiff of his constitutional rights on account of his race, skin color, ethnic origin, nationality or the perceived race, skin color, ethnic origin or national origin.
Pending Motion
Defendants move for summary judgment dismissing the complaint. They argue that plaintiff is unable to establish a constitutional law violation and that his state claims fail as a matter of law. To start, defendants argue that the state and federal claims for false arrest, as set forth in the fourth and eleventh causes of action, must be dismissed as plaintiff was not arrested and because the search warrant was issued upon a judicial finding of probable cause. They note that plaintiff was not handcuffed and did not testify as to any bad faith conduct on the part of the police officers involved. Similarly, the second, third, eighth, ninth and tenth causes of action, grounded in unlawful search of premises and unlawful detention under state and federal law, must be dismissed as the search warrant was issued upon the basis of probable cause after the officers conducted their initial investigation. Defendants maintain that any "Monell"[FN1]
claims alleged against the City of Yonkers must be dismissed also on the basis of a search warrant issued upon the justification of probable cause.
Defendants also argue that plaintiff fails to establish claims for assault and battery, as set forth in the first cause of action, because plaintiff was not physically injured during the execution of the search warrant. According to defendants, the negligence claims as asserted in the fifth, sixth and seven causes of action, must fail, as among other reasons, these claims fall within the scope of the tort of false imprisonment. With respect to the claim alleging discrimination and equal protection under Section 1983, defendants assert that plaintiff is unable [*4]to point to any unfair treatment on the basis of a protected characteristic. Defendants argue that the individual detective police officers are also entitled to summary judgment on qualified immunity grounds.
In opposition, plaintiff argues that he has rebutted the presumption of probable cause attached to the warrant because the warrant was procured based on the false or unsubstantiated statements of a police officer. Specifically, plaintiff testified, under oath, that the alleged heroin sales by him never occurred. Further, for example, although the warrant affidavit stated that plaintiff kept the heroin sold to the confidential informant in the apartment and in the vehicle, during the search, nothing was found. This lack of contraband is allegedly evidence that Donohue's affidavit contained false and unsubstantiated information. Although plaintiff had a prior drug arrest, this was eleven years prior and did not involve heroin. Lastly, plaintiff was not arrested as a result of the search, nor has he ever been arrested, charged or prosecuted for the sale of heroin.
Plaintiff adds that the second cause of action alleges that the search lasted too long in violation of state law, and the eighth cause of action alleges that the search lasted too long in violation of federal law. According to plaintiff, the police should have known after five minutes that they allegedly made a mistake. However, the search lasted hours. Plaintiff alleges that only a jury can determine whether the defendants needed two full hours to realize they made a mistake. Further, the third and ninth causes of action allege that plaintiff's strip search was not privileged. Once the police officers allegedly realized they were purportedly provided with bad information, they should not have performed a strip search. The assault and battery claims are also based on the strip search.
Plaintiff concedes that where, like here, a plaintiff is alleging a false arrest, negligence claims are not viable. Furthermore, plaintiff concedes that he cannot support Monell liability against the City of Yonkers. However, plaintiff argues that the state law claims alleged against the City of Yonkers are still viable because it is defendants' employer.

DISCUSSION
I. Summary Judgment
"The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law." Dallas-Stephenson v Waisman, 39 AD3d 303, 306 (1st Dept 2007). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party." William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 (2013) (internal quotation marks and citation omitted). Upon proffer of evidence establishing a prima facie case by the movant, "the party opposing a motion for summary judgment bears the burden of produc[ing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact." People v Grasso, 50 AD3d 535, 545 (1st Dept 2008) (internal quotation marks and citation omitted). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility." Ruiz v Griffin, 71 AD3d 1112, 1115 (2d Dept 2010) (internal quotation marks and citation omitted).
False Arrest and False Imprisonment (fourth and eleventh causes of action)
To establish a cause of action for false arrest and imprisonment, plaintiff must prove that defendants "intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to it, and that the confinement was not otherwise privileged." Hernandez v [*5]City of New York, 100 AD3d 433, 433 (1st Dept 2012). The existence of probable cause "constitutes a complete defense to causes of action alleging false arrest [and] false imprisonment . . . . [It] does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been committed or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances." Shaw v City of New York, 139 AD3d 698, 699 (2d Dept 2016) (internal quotation marks and citations omitted).
Where, like here, "a court issues a search warrant, there is a presumption of probable cause for the detention of the occupants of the premises to be searched which the plaintiff has the burden of rebutting. A plaintiff rebuts the presumption of probable cause by establishing that the officer procured the warrant based upon his or her own false or unsubstantiated statements." Harris v City of New York, 153 AD3d 1333, 1334 (2d Dept 2017) (internal quotation marks and citations omitted).
Here, defendants have met their burden to establish the existence of probable cause for detaining plaintiff and the other members of the apartment during the search of the apartment and the car by submitting the "court-issued search warrant." Harris v City of New York, 153 AD3d at 1334. The search warrant commanded the police officers with the authority, without first announcing their purpose, to make an immediate search of the apartment, plaintiff, and the car. This warrant was executed based on Donohue's affidavit, in which he detailed three prior controlled buys where plaintiff sold heroin to a confidential informant, who was a registered informant with the Police Department. Donohue affirmed that he also personally witnessed plaintiff doing so.
In opposition, although plaintiff denies that he was involved in any of those three controlled buys, plaintiff fails to meet his burden to rebut the presumption of probable cause "with evidence that the warrant was procured based upon [Donohue's] false or unsubstantiated statements." Ali v City of New York, 185 AD3d 880, 882 (2d Dept 2020) (internal quotation marks omitted); See e.g. Harris v City of New York, 153 AD3d at 1334-1335 ("Thus, the plaintiff's contention that the instant search warrant was invalid because the police did not obtain sufficient corroboration of the information supplied by the confidential informant is without merit"). It is well settled that "[p]robable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Keith v City of New York, 641 Fed Appx 63, 67 (2d Cir 2016) (internal quotation marks and citation omitted). Accordingly, the fact that no evidence was found during the performance of the search cannot be used to show what Donohue knew when submitting an affidavit for a search warrant.
Probable cause for an arrest "constitutes a complete defense to a cause of action alleging false arrest and false imprisonment including a cause of action asserted pursuant to 42 USC § 1983 to recover damages for the deprivation of Fourth Amendment rights under color of state law, which is the federal-law equivalent of a state common-law false arrest cause of action." Sinclair v City of New York, 153 AD3d 877, 878 (2d Dept 2017) (internal citations omitted). Accordingly, to the extent plaintiff is claiming that individual defendants unlawfully detained him in violation of 42 USC § 1983, these claims are untenable because, as discussed above, probable cause existed for the search warrant. See Singer v Fulton County Sheriff, 63 F3d 110, 118 (2d Cir 1995), cert denied 517 US 1189 (1996) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause"). Accordingly, defendants are granted summary judgment dismissing the fourth and eleventh causes of action alleging state and [*6]federal claims of false arrest and false imprisonment.
Assault and Battery, Claim for Excessive Force and Remaining Claims
In order to sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact. Timothy Mc. v Beacon City Sch. Dist., 127 AD3d 826, 829 (2d Dept 2015). The elements of a cause of action to recover damages for battery are intentional bodily contact that is offensive in nature. Id. "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical'." Tardif v City of New York, 991 F3d 394, 410 (2d Cir 2021). A municipality may be vicariously liable on a state law assault and battery claim for torts committed by a police officer under a theory of respondeat superior. Eckardt v City of White Plains, 87 AD3d 1049, 1051 (2d Dept 2011).
"Claims that law enforcement personnel used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its standard of objective reasonableness." Combs v City of New York, 130 AD3d 862, 864 (2d Dept 2015) (internal quotation marks and citations omitted); see also Shamir v City of New York, 804 F3d 553, 556 (2d Cir 2015) ("the use of excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment"). In addition, "a plaintiff must have sustained some injury to maintain a claim of excessive force, although that injury need not be severe." Boyd v City of New York, 149 AD3d 683, 685 (2d Dept 2017). Caselaw indicates that "[s]trip-searches of arrestees charged with misdemeanors or other minor offenses violate the Fourth Amendment to the United States Constitution unless there is a reasonable suspicion that the arrestee is concealing weapons or contraband based on the crime charged, and the circumstances of the arrest." Huck v City of Newburgh, 275 AD2d 343, 344 (2d Dept 2000) (internal citations omitted).
The complaint alleges that plaintiff was handcuffed, shoved to the ground and that defendants held firearms to his head. Further, a strip search was performed in the presence of the occupants of the apartment. However, plaintiff testified that the police officers did not shove him or use handcuffs. Murray also testified that there were no firearms. Plaintiff also testified that defendants brought him to the bedroom and performed a strip search. In opposition to defendants' motion, plaintiff alleges that a triable issue of fact remains as to whether an assault and battery was committed by the defendants when they conducted a strip search of plaintiff.
Defendants argue that plaintiff was not physically injured during the search, nor did defendants draw their firearms or handcuff him. Further, it was not the custom and practice of the police to strip search individuals while executing a search warrant and that defendants did not recall performing one on plaintiff. Accordingly, here, defendants demonstrated their entitlement to summary judgment on the assault and battery, excessive force and unlawful search causes of action by demonstrating the reasonableness of their conduct while executing the search warrant.
Nevertheless, even assuming that defendants did conduct a strip search of plaintiff, plaintiff's own testimony established that the officers' search was reasonable. It is well settled that "a police officer executing a search warrant is privileged to use reasonable force to effectuate the detention of the occupants of the place to be searched." Boyd v City of New York, 149 AD3d at 684. Further "[t]he reasonableness of a particular use of force is judged from 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 684-685 (internal quotation marks omitted). Plaintiff testified that he was brought into a private room for about ten minutes and asked to strip naked as the police officers searched him. [*7]Under the circumstances, where the police officers were executing a search warrant on plaintiff personally to find illegal drugs or contraband, "the actions of the officers were reasonable given that they had reason to believe that illegal drugs were being sold from the premises." Id. at 685. Although plaintiff claims that he suffered mental impairment as a result of the search, plaintiff did not sustain any physical injuries. Courts have held that "emotional pain and suffering cannot form the basis of an excessive force claim." Boyd v City of New York, 149 AD3d at 685.
Plaintiff's remaining causes of action are also grounded in unlawful search and unlawful detention. In addition to alleging that his detention was improper due to a strip search, he alleges that the detention lasted too long and that once defendants realized there was no contraband at the apartment, they should not have performed a strip search.
The record indicates that when defendants arrived at the residence, plaintiff let them in and Murray allowed them to search the car. Although the timing varies between what is alleged in the complaint and what plaintiff testified to, the police were not there longer than 2 hours. No members of the family were handcuffed, there were no firearms drawn, no one was injured during the search process and nothing was broken in the apartment. Furthermore, while plaintiff asserts that he was unfairly not provided with the search warrant until after the search, the warrant specifically commanded the police officers to enter unannounced. Moreover, upon arrival, the officers advised plaintiff that they had a search warrant to search him, the apartment and the car. After the search was complete, the officers informed plaintiff that no evidence was found and plaintiff was not arrested as a result of the search. He was provided with a copy of the warrant later that evening.
As previously mentioned, the existence of the court-ordered search warrant established, prima facie, the existence of probable cause to detain plaintiff and the other members of the apartment during the search process. Further, as the facially valid search warrant also provided for the search of the person of Victor Vizcarrondo, defendants did not exceed the scope of the warrant by doing so.
To the extent that plaintiff alleges it was "excessive" for defendants to detain them for two hours, this allegation is also without merit. Courts have found that even handcuffing a plaintiff and two teenaged sons for the duration of a two-hour search may be reasonable under the circumstances, "given that officers did not know who they might encounter or whether any occupants of the house might have weapons." Harris v City of New York, 153 AD3d at 1335. Here, even if the search lasted two hours, no one was handcuffed, injured, or detained. Furthermore, "[t]he fact that the [other members of the apartment were] not named as a subject of the warrant did not render the conduct of the police objectively unreasonable." Id. Thus, "[i]n opposition, the plaintiff failed to raise a triable issue of fact regarding the propriety of the level of force used by the police in executing the search warrant." Id. Accordingly, defendants are granted summary judgment dismissing any remaining causes of action grounded in unlawful search or detention.
Claims under 42 USC § 1983 against the City of Yonkers
"[A] person has a private right of action under 42 USC § 1983 against police officers who, acting under color of law, violate federal constitutional or statutory rights." Delgado v City of New York, 86 AD3d 502, 511 (1st Dept 2011). Furthermore, pursuant to 42 USC § 1983, plaintiff may "sue government agents for unlawful arrest . . . in violation of the laws and Constitution of the United States." De Lourdes Torres v Jones, 26 NY3d 742, 762 (2016). Under this statute, a municipality may be liable for civil rights violations if plaintiff shows that [*8]his civil rights were violated as a result of "an official government policy, custom or widespread practice." Id. "[T]he existence of such a policy may be shown by proof that the municipality had a custom or practice that was both widespread and reflected a deliberate indifference to its citizens' constitutional rights." Id. at 768.
Here, as conceded by plaintiff, he fails to raise a triable issue of fact as to whether the unconstitutional actions occurring during the performance of the search warrant were the result of "an official government policy, custom or widespread practice" of the City of Yonkers, itself. Accordingly, defendants are granted summary judgment dismissing plaintiff's causes of action grounded on civil rights violations pursuant to 42 USC § 1983.
Qualified Immunity
Defendants argue that Donohue and Robertson, Jr. are entitled to qualified immunity for any claims brought pursuant to 42 USC § 1983. "If found to be objectively reasonable, [an] officer's actions are privileged under the doctrine of qualified immunity. The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Davila v City of New York, 139 AD3d 890, 893 (2d Dept 2016) (internal quotation marks and citation omitted). As noted, plaintiff has failed raised a triable issue of fact as to whether the individual defendants' actions were objectively reasonable. Accordingly, defendants established that the individual defendants' actions were privileged under the doctrine of qualified immunity.
Negligence-fifth, sixth, and seventh causes of action:
In the causes of action grounded in negligence, plaintiff alleges that defendants acted in a careless manner when they performed their search warrant, that the City of Yonkers negligently hired/trained these defendants and that plaintiff sustained damages as a result. However, as conceded by plaintiff, his negligence claims, which are "based on personal injuries [he] allegedly suffered when [he was falsely arrested and imprisoned], [are] fatally defective because there is no cause of action for false arrest or false imprisonment sounding in negligence." Swinton v City of New York, 61 AD3d 557, 558 (1st Dept 2009).
Furthermore, an employer can be held liable for torts committed by an employee who is acting within the scope of his or her employment under a theory of respondeat superior, however no claim may proceed against the employer for negligent hiring, retention, supervision or training. Eckardt v City of White Plains, 87 AD3d 1049, 1051 (2d Dept 2011). Here, it is undisputed that the complained-of actions were performed by the officers in the scope of their employment with the City of Yonkers. Accordingly, defendants are granted summary judgment dismissing the fifth, sixth and seventh causes of action.
Remaining Causes of Action
Defendants are granted summary judgment dismissing the twelfth cause of action alleging a violation 42 USC § 1983 grounded in discrimination/equal protection because this cause of action is "wholly unsupported by any allegations of fact identifying the nature of that conduct or the policy or custom which the conduct purportedly advanced." Martin v City of New York, 153 AD3d 693, 694 (2d Dept 2017) (internal quotation marks and citation omitted).
All other arguments raised on this motion and evidence submitted by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.

 CONCLUSION
Accordingly, it is hereby
ORDERED that defendants' motion for summary judgment dismissing the complaint is granted; and it is further
ORDERED that plaintiff's complaint is dismissed in its entirety with costs and disbursements to said defendants, as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of these defendants.
Dated: November 27, 2024
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.

Footnotes

Footnote 1:See Monell v Department of Soc. Servs. of City of New York, 436 US 658 (1978).